## James G. Trainer and William O. Trainer, Appellants, v. Alfred L. Baker, Appellee.

### Gen. No. 19,296.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed and remanded. Opinion filed October 15, 1915. Rehearing denied November 16, 1915.

### Statement of the Case.

Action by James G. Trainer and William O. Trainer, copartners, plaintiffs, against Alfred L. Baker, defendant, to recover $22,500 claimed to be due plaintiffs for services as real estate brokers in selling certain property. There were two trials in the Superior Court, a verdict for plaintiffs for $17,500 being returned in the first, and a verdict for defendant being returned in the second. From a judgment on the second verdict, plaintiffs appeal.

There was evidence tending to prove that 'in 1907 plaintiffs were authorized in an interview had by one of them with defendant to offer the property for sale to any person whom they might think would buy, for the price of $1,000,000, and that a commission of two and one-half per cent. upon that price would be paid them, if they "found a purchaser for the property." There was also evidence tending to prove that plaintiffs submitted the property to several prospective purchasers,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

one of whom was Leon Mandel; that plaintiff James G. Trainer learned from Mr. Mandel that he would be willing to pay $1,000,000 for the whole property, including an outstanding leasehold estate for which the tenant was demanding $150,000; that thereupon said Trainer asked defendant if he would he willing to sell the property for $850,000, subject to the lease, which defendant declined to do; that this reply was reported to Mr. Mandel, who then suggested that he would be willing to buy if defendant would take back a mortgage on the property at a low rate of interest for part of the purchase price, but this was also refused by defendant, who said that he "wanted to sell it for cash," and that plaintiffs "might be able to borrow the money from somebody at a low rate of interest"; that Mandel then said that as the holiday season was approaching, he was "pretty busy" and would do nothing further until after the first of the year, when he "would take it up" again; that Trainer saw Mandel again in January, 1908, but the latter would not make any better offer than he had made; that Mandel thereafter went to California and was gone until May, 1908, leaving word with Trainer to let him (Mandel) know at Santa Barbara, California, if, in the meantime, defendant would consent to accept his offer of $1,000,000 for the whole property; that during Mandel's absence, Trainer succeeded in getting the tenant to reduce his price to $137,500 for the leasehold interest; that upon Mandel's return to Chicago in May, the matter was again discussed with him, but without any result; that in September or October, 1908, Trainer again called on Mandel, but Mandel then said that "he did not know whether he would be in a position to buy anything for some time," and that consequently he was "not interested at the present time"; that in the meantime, however, Mandel had also been negotiating with a broker named Strauss, who had agreed with Mandel to divide his commissions with Mandel's son-in-law, who was

also in the real estate business; that in October or November, 1908, Mandel telephoned to another broker named Bacheldor, who had also talked with him about the property, and authorized Bacheldor to negotiate with defendant for the purchase of the property, agreeing to pay Bacheldor a commission of $10,000, on condition that half of it should be paid to Mr. Mandel's son-in-law; that as the result of Bacheldor's negotiations, a written contract of sale was entered into between defendant and Mandel, in January, 1909, by the terms of which Mandel agreed to pay $900,000 for the property, subject to the existing lease, and to pay a commission to Bacheldor, and also agreed to save defendant harmless "from any and all claims for commissions arising out of the sale of said premises," and to defend any suit that might be brought to recover any such commissions.

The court, at the request of defendant, instructed the jury "that this is a suit between James G. Trainer and William O. Trainer on the one side and Alfred L. Baker on the other and between no one else, and that this is not a suit against Leon Mandel," and that "The question simply is whether defendant Baker is liable under the evidence and the instructions of the court to the plaintiffs in this case. You should not, therefore, overlook this fact nor find a verdict against defendant Baker simply because Leon Mandel agreed with defendant and his cotrustees to indemnify and hold them harmless from any and all claims for commission arising out of the sale of the property in question in this case to said Leon Mandel; nor simply because of the fact that defendant and said trustee paid no commission for the sale of said property; nor simply because of the fact, if you find it to be a fact from the evidence, that Mandel paid, or agreed to pay, $10,000 as commission, one-half to E. A. Bacheldor and one-half to Joseph Wineman."

The fifth and eighth instructions given on behalf of defendant told the jury generally that before they could find for the plaintiffs, they "must find and believe" from the evidence "that Leon Mandel was induced to buy the property in question in this case by and through the efforts of plaintiffs, and that plaintiffs were the efficient and procuring cause of said sale being made to said Mandel, and that their work, in fact, caused the said Leon Mandel to purchase said property, and that without their efforts and work, he would not have purchased the same." Following this general statement, the instructions go on to say that it is not sufficient for the plaintiffs to show that they called Mandel's attention to the property, gave him the price and description, and tried to sell it to him before he bought it, but that the plaintiffs *"must go further and prove* by a preponderance or greater weight of the evidence, *that they were the direct and procuring cause* of the purchase of said property by said Leon Mandel."

By the fourth instruction given on behalf of defendant, the jury were told that if they find from the evidence "that defendant agreed to pay to plaintiffs a real estate commission of two and one-half per cent., in case they found a purchaser, and completed and consummated a sale of the property in question in this case to such purchasers; and you further find from the evidence that plaintiffs did not consummate and complete the sale of the property in question in this case to the purchaser thereof, Leon Mandel, then and in the event you find the foregoing from the evidence, plaintiffs cannot recover in this case, even though you may find from the evidence that they endeavored to sell said property to said Mandel, and communicated to defendant the fact that they were endeavoring so to do."

There was some evidence tending to prove that after the plaintiffs had begun negotiations with Mandel, and

had succeeded in inducing him to consider the property favorably, the sale was consummated and completed by him through another broker for the purpose of obtaining a personal advantage, or a lower price, by making it appear that plaintiffs were not entitled to a commission, and that defendant knew that such was the fact.

The fourteenth instruction, in its first three paragraphs, purports to set forth all the facts constituting the basis of the plaintiff's claim, and then adds, in a fourth paragraph, the following: "The jury are instructed that even though you may find the foregoing facts from the evidence, nevertheless, plaintiffs cannot recover in this case unless you believe from the preponderance or greater weight of the evidence, the burden of proof being upon plaintiffs, that they were the direct and procuring cause of the purchase of said property by said Leon Mandel."

LEE D. MATHIAS and CHARLES H. ROBINSON, for appellants.

JUDAH, WILLARD, WOLF & REICHMAN, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

## Abstract of the Decision.

1. INSTRUCTIONS, § 81*—*when instruction singling out particular facts improper.* An instruction which singles out particular facts and gives them undue prominence has a tendency to mislead and confuse the jury and is improper.

2. INSTRUCTIONS, § 48*—*when instruction as to weight and effect of evidence improper.* In an action by brokers to recover commissions on the sale of real estate, an instruction which states that it is not sufficient for the plaintiffs to show that they called the purchaser's attention to the property, gave him the price and description and tried to sell it to the purchaser before he bought it, but that plaintiffs "must go further and prove by a preponderance or greater weight of the evidence that they were the direct and procuring cause of the purchase of said property" by the purchaser is objectionable, in that

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

it singles out isolated facts, telling the jury that such facts are not enough to prove the issue, invades the province of the jury and is argumentative and misleading.

3. INSTRUCTIONS, § 133*—*when omission of reference to theory of cause improper.* An instruction which omits all reference to a theory of the facts which, in truth, would entitle plaintiffs to recover is erroneous.

4. INSTRUCTIONS, § 48*—*when instruction on facts improper.* In an action by brokers to recover commissions on the sale of real estate, an instruction which contains a repeated inference amounting to an assertion that the facts enumerated therein are not in themselves sufficient to prove that plaintiffs were in fact the procuring cause of the sale, which was the principal issue in the case, is erroneous.

5. TRIAL, § 124*—*when argument of counsel improper.* Evidence examined and *held* that statements made by counsel in his argument to the jury were of such character as to arouse the passion and prejudice of the jury, the effect of which was not removed by the action of the court in finally sustaining an objection.

6. TRIAL, § 128*—*when argument of counsel improper.* It is improper for counsel in argument to the jury to state facts which are not in evidence, and especially to fortify such statements by personal asseveration as to their truth.